IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-31017
Summary Calendar

_____

LYNN CURTIS

                    Plaintiff - Intervenor Defendant - Appellant

v.

EXXON CORPORATION

                    Defendant - Intervenor Defendant - Appellee

v.

CIGNA INSURANCE COMPANY

                    Intervenor Plaintiff - Appellant

_____

Appeal from the United States District Court
for the Middle District of Louisiana
(94-CV-2745-B)

_____

September 29, 1997

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

     Lynn Curtis and Cigna Insurance Company appeal the district

court's grant of judgment as a matter of law in favor of Exxon

Corporation.  We conclude that the district court correctly

determined that Exxon could not be held strictly liable for the

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

death of George Curtis because the opening through which he fell did not, as a matter of law, pose an unreasonable risk of harm. The judgment of the district court is affirmed.

I.   BACKGROUND

This case arises out of a fatal injury sustained by George Curtis ("Curtis") on November 19, 1993, while he was performing work at the Baton Rouge refinery of Exxon Company, U.S.A. ("Exxon").  Curtis was employed by Mansfield Industrial Coatings of Louisiana, Inc. ("Mansfield"), which had contracted with Exxon to perform a number of projects at the refinery.  Curtis was part of a Mansfield crew engaged in sanding and painting "field welds" resulting from the installation of new pipes at the refinery dock.  At all times pertinent to this action Exxon was the owner of the dock and the pipeline appurtenances where Curtis was working.

The refinery dock is a steel and concrete pier-type structure approximately fifty feet wide and 2,750 feet long which extends over the Mississippi River.  It consists of four levels of pipeband that transfer crude from vessels to shore tanks and product from shore tanks to vessels.  These pipebands are at the 10-foot, 18-foot, 28-foot, and 38-foot levels.  Each pipeband has openings that allow vertical pipe risers to reach higher pipeband levels.  These openings vary in width.  On the 28-foot level, near the area where Curtis was working at the time of the

2

accident, an opening thirty-nine inches wide divides the pipeband into an east side and a west side. Walkways cross the width of the pipeband approximately every 150 feet.

On the morning of November 19, 1993, Curtis apparently had sanded and was preparing to paint a "field weld" on a riser located at the thirty-nine-inch opening of the 28-foot level. Although Curtis was working on the east side of the opening, he apparently had stored his paint on the walkway running along the west side of that level. While attempting to cross over the opening, Curtis fell to the 18-foot level below. Members of a welding crew working on that level found Curtis unconscious immediately after the fall. Curtis received prompt medical attention, but died the following day in the hospital as a result of severe head injuries.

Curtis's widow, Lynn Curtis, filed suit against Exxon in the 19th Judicial District Court for East Baton Rouge Parish, Louisiana, on November 22, 1994. Exxon timely removed to federal district court on the basis of diversity jurisdiction. Lynn Curtis sought damages under theories of negligence and liability without fault. Cigna Insurance Company ("Cigna") intervened for medical, funeral, and compensation benefits paid to Lynn Curtis. A jury found that Exxon was not liable in negligence, but was liable without fault for being in custody of a defective opening in the pipeband which presented an unreasonable risk of harm. The jury attributed fault of 30% to Exxon, 45% to Mansfield, and

25% to George Curtis.  The jury found that Lynn Curtis had suffered damages in the amount of approximately $250,000.

After the jury returned its verdict, the parties submitted briefs on Exxon's motion, made at the close of plaintiff's evidence and renewed upon conclusion of trial, for judgment as a matter of law.  The district court granted Exxon's motion and entered judgment dismissing plaintiff's strict liability claim with prejudice.  The court also entered judgment on the jury verdict on plaintiff's negligence claim.

Lynn Curtis and Cigna raise two issues on appeal.  First, they contend that the district court erred in ruling that the opening through which Curtis fell did not, as a matter of law, pose an unreasonable risk of harm.  Second, they contend that the district court erred in requesting the jury to quantify the fault of the employer, Mansfield, along with that of Curtis and Exxon. The latter argument rests on the proposition that the 1996 amendment to article 2324 of the Louisiana Civil Code, which arguably permits quantification of employer fault, is not to be applied retroactively.  Because we conclude that the district court properly dismissed the strict liability claim, we do not reach this second issue.

## II. <u>DISCUSSION</u>

Rule 50 of the Federal Rules of Civil Procedure provides, in part:

4

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1). The district court may rule on a motion for judgment as a matter of law either before or after submission of the case to the jury. FED. R. CIV. P. 50(b).

We review the grant of judgment as a matter of law de novo. Texas Farm Bureau v. United States, 53 F.3d 120, 123 (5th Cir. 1995). A motion for judgment as a matter of law should be granted by the district court if, after considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable people could not arrive at a verdict to the contrary. Id.; see also Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir. 1994).

The contested issue in this appeal is whether the thirty-nine-inch opening through which George Curtis fell posed an "unreasonable risk of harm" as required under Louisiana law to prevail on a theory of strict liability. See Oster v. Dep't of Transp. & Dev., 582 So. 2d 1285, 1288 (La. 1991).[1] Absent an

---

[1] Article 2317 of the Louisiana Civil Code provides, in relevant part:

5

unreasonable risk of harm, the defendant possesses no duty.  Id.

The unreasonable risk of harm criterion "entails a myriad of

considerations and cannot be applied mechanically."  Id.  This

criterion requires the court

> to balance the likelihood and magnitude of harm against
> the utility of the thing . . . .  In addition to the
> likelihood and magnitude of the risk and the utility of
> the thing, the [court] should consider a broad range of
> social, economic, and moral factors including the cost
> to the defendant of avoiding the risk and the social
> utility of the plaintiff's conduct at the time of the
> accident.

Id. at 1289.  The court must consider all of the circumstances

surrounding the particular accident under review.  Id.

One factor to be considered in determining whether a

condition is unreasonably dangerous is the degree to which a

potential victim may observe the danger.  Phipps v. Amtrak, 666

So. 2d 341, 343 (La. Ct. App. 1995).  "When a dangerous condition

is patently obvious and easily avoidable, it can hardly be

considered to present a condition creating an unreasonable risk

---

> We are responsible, not only for the damage occasioned
> by our own act, but for that which is caused by the act
> of persons for whom we are answerable, or of the things
> which we have in our custody.

LA. CIV. CODE. ANN. art. 2317 (West 1997).

To prevail on a theory of strict liability under article
2317, a plaintiff must show that 1) the thing which caused the
damage was in the custody of the defendant; 2) the thing
contained a "defect" (i.e., it had a condition that created an
unreasonable risk of harm to the plaintiff); and 3) the
"defective" condition of the thing caused the plaintiff's
injuries.  Oster, 582 So. 2d at 1288.  The issues of custody and
causation are not contested in this appeal.

6

of harm." Id.; see also Desormeaux v. Audubon Ins. Co., 611 So. 2d 818, 821 (La. Ct. App. 1992) ("An owner is not liable [in negligence or strict liability] for injury which results from a condition which should have been observed by the plaintiff in the exercise of reasonable care or which was obvious."). In Desormeaux, for instance, the court held that a building owner was not strictly liable for injury to a roof repairman who slipped on a damp ceiling joist:

> He was a skilled repairman and was fully aware of the obvious condition in the roof and attic. The dangers of the work area were obvious. [Plaintiff] took no measures to reduce the dangerous work area, e.g. [sic] adding more light and making a walkway over the joists. He clearly voluntarily chose to empty the washtub in an unsafe manner, lost his footing and fell. This was the cause-in-fact of the accident.

Desormeaux, 611 So. 2d at 821.

The evidence in this case establishes that the thirty-nine-inch opening through which Curtis fell exists to permit the use of vertical risers between levels of pipe and to accommodate the structural supports for the dock itself. The opening accordingly has significant utility. To determine whether the opening presented an unreasonable risk of harm, we must consider the manner in which the property was intended to be used. Oster, 582 So. 2d at 1289. Significantly, the opening exists in an area not subject to general traffic but utilized by maintenance and construction personnel. To facilitate work on the pipebands, walkways have been constructed along the length of the dock and

7

at approximately 150-foot intervals across the width of the dock on each level.  The evidence indicates that workers might nevertheless be required to traverse the pipes themselves, although it also indicates that the use of scaffolds or pick boards under such circumstances is common and that these materials are easily available upon request by a contractor. Further, workers are required to wear life preservers and safety lanyards while working on the pipebands, and Curtis had been provided with both.  The opening was in no way obstructed from plain view and Curtis or any other worker who needed to cross it could have used a nearby walkway or a temporary cross-over. Considering all of the circumstances, we agree with the district court that the likelihood of the type of accident that occurred here is minimal.[2]  The opening does not present an unreasonable risk of harm and the district court properly granted Exxon's motion for judgment as a matter of law.

III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2]  The fact that the accident did in fact occur is not proof that the thing in question presents an unreasonable risk of harm. Gray v. Economy Fire & Cas. Ins. Co., 682 So. 2d 966, 971 (La. Ct. App. 1996).